May it please the Court, Bargey Bowmick, appearing here for the plaintiffs. I'd like to reserve five minutes for rebuttal then. In my reference to the opposing counsel before the appellate, just keep an eye on the clock. I'll try to help you with the five minutes, but keep your own time. I appreciate that, Your Honor. We're here on a motion for summary judgment and a major basis of our opposition. I'd like to focus on the general supervision prong of the administrative exemption. I'll give my limited time. The administrative exemption has a separate, stand-alone general supervision prong. This Court has addressed that in Campbell v. Price Waterhouse Coopers and made very clear that this is a highly factual question that should be submitted to the trier of fact to be decided. There was a mountain of evidence in the record showing that the clients here were subject to more than general supervision and they did not get their day in court. That's contrary to the conflicting evidence that's in the record that they should have been provided. Not only did they not get their day in court before trier of fact, they didn't even... Let's examine that a little bit. I understand that the district court has a discretion to move for summary judgment if there are disputed issues to say, well, there's disputed issues and you can't do it on summary judgment. On the other hand, there are many times in district court where the other side says, we'll take it on their evidence. In other words, we wouldn't say that's the evidence. We'll just say whatever their evidence is, we'll move for summary judgment on that because even with their best evidence all given their way, they don't win. Or sometimes there's undisputed evidence. And my worry here is you don't dispute that your clients work along specialized or technical lines, do you? I don't and that's... Well, and therefore the only issue then on general supervision is whether they worked under only general supervision. Wouldn't you agree with that? That's correct. So I guess I'm trying to figure out then, the general supervision requirement is not included in the FLSA, but it is California law, unique to California law. So you got an Idaho yahoo trying to apply it, but I'm trying to make sure you're with me. I'm following California has interpreted and it seems to me that we can find that appellants exercise their discretion and independent judgment if there's undisputed evidence that they also worked only under general supervision. Will you agree with that? I do not agree with that, Your Honor. Why? Because I looked at all the California law and it seems to me that if there's undisputed evidence that the appellants also worked under general supervision, that then I have to look and see what they do. And I look at the undisputed, I thought you were just saying that they did work only under general supervision. Absolutely not. We are saying that their work was subject to far more than only general supervision. And the reason... Well, okay. I guess what the undisputed evidence that I see here is they have the authority to settle disputes within monetary limits. They have authority to direct the litigation. They have authority to investigate their own claims. The only thing that we can say is the managers audit periodically random cases. That's not sure, Your Honor. What else should I have in that litany of facts? Also to be added to the facts, there are separate audits that are done on random cases. In addition... That's what I said. Although the managers can audit random cases periodically. The managers, in addition to audits, there are mandatory diary reviews that take place every 12, every 30, every 60, every 180 days for all of the claims that are signed to both of my clients. And that's a caseload of 165 cases. So everything that's reviewed, it's not just a few here at a time. You dispute that they can settle disputes within their own monetary limits? I dispute that that's done independently because there are procedures for... Because they have to put it in a book? Is that it? They have to put it in a book, and they have to put it in a system called Z-Notes that has to be reviewed by the managers. And the procedures... They have to have permission? They have to have permission where it's outside of their authority. Well, but under their authority, they can settle these disputes? Right. Okay. Can they also direct the litigation? They can direct the litigation. Can they also investigate their own claims? They do investigation, but not independently. Well, what I understand you say is they do all of these things independently, but they have to write down what they've done, and they thereafter have periodic random audits. So therefore, it's bigger than general supervision. It's not just that they have to write down what they've done. It's that in writing down what they've done, it is supervised by the supervisors. It's reviewed? What I mean by supervised is what the defendant's own policies say, is the supervisors have to put notes into the system showing that they reviewed it, showing that there was meaningful review of what their subordinates did, and that there was specific direction. All of these facts create a dispute. What direction do they have if they've already settled the case? What direction do they have if they've directed the litigation? What direction do they have if they are the ones who determine how to investigate their claims? If all the supervisor does. Now, I'm pretty anxious about this, and I'm asking these questions, because I was an insurance defense lawyer. Okay? I had an attorney who was looking over my back, who was saying what I could do. I had to send them and get their authority before I could do anything, so I was even worse than these people. I had, they came in, audited my files. They came in, did all this kind of stuff, and yet you would say I didn't have supervision, or that I was under more than general supervision? The interesting thing... I mean, I'm just trying to liken what you're trying to suggest to me to what I understand you're arguing. And I find it interesting when there's an attempt to liken attorneys to employees that are challenging the administrative exemption, because there's a separate professional exemption. Oh, I understand. I understand. I'm just trying to understand what they did, so I'll know whether it meets this prong, or it doesn't. Absolutely. The professional exemption does not have a separate general supervision. Can I just segue from what my brother says about this? When the supervisors review the diary entries and so on, do they have the authority to countermand any settlements or things that your clients have done? Or are they simply reviewing to determine whether mistakes were made? Well, they absolutely have the authority to put their substantive input into what they've seen. Unanswer my question. Let's take a case. Your clients settle some case. The supervisor comes in, looks at the book, says, you know, you just made a mistake there. We're going to, we're going to rescind that settlement. Can they do that? I don't think they can do that, but there's a ton of supervision that comes before there's even a chance to settle the case, given reviews at 12, 30, 60, 90 days. You're talking about after the fact. This is what Judge Smith has been talking about. They can do all these things that he has delineated. They seem to have to write down what they have done. It's not a prospective thing. It's after the fact review. It seems to me what you're saying is that that's all it is. The supervisors that come in and look can't say what you did was wrong, therefore we're going to undo it. They can say, you know, you made a mistake there. We don't want you to do that again, but they can't undo it, right? It's not all after the fact review. If they're going to try to take this simple step to deny a claim because it wasn't work-related, they do have to go to their supervisor first for permission before they do that. Even in their authority? Even in their authority. So these are all facts when the inferences are drawn in the light most favorable to the non-moving party that summary judgment absolutely cannot have been granted on this record. And speaking to a point that Your Honor brought up earlier, the reason I was disagreeing is it seemed to be hearkening to this conflation of the independent and judgment discretion prong with the general supervision prong. Well, I was trying my best not to do that, but you could give me the business if you want to. I mean, all I was trying to say is I put all the evidence together about what they do and how it is quote-unquote supervised and try to make that general determination under the general supervision prong. You want to move to the independent judgment prong? I will in the sense that I appreciate that Your Honor has put all the evidence together and looked at it in this way. And the problem here is that the district judge didn't. The district judge ignored evidence that when viewed in the light most favorable to the non-moving party absolutely precluded summary judgment. Do you want to save that point for rebuttal? You've got three minutes and some seconds. I appreciate that. Whatever you like to do, but if you wish to do that, we can save it for rebuttal. I'll take your Honor's suggestion. Very good. Okay. Let's hear from the other side. Good morning, Your Honors. May it please the court. My name is Christopher Decker. I represent the defendant in this company, Zurich American Insurance Company. The district court properly granted summary judgment here. And I think the focus of the panel during appellant's argument was exactly where it should be, which is on the evidence itself. This is a summary judgment ruling and the question is whether or not the evidence in the record that was identified in the moving and the opposition papers reveals a triable dispute of the material fact. Not just any dispute, but a dispute of material fact. And I would like to address the general supervision element, which is what seems to have garnered the most attention. And I want to begin by pointing out that the general supervision element is not unique to California law. That is an inaccuracy in the appellant's position. 29 CFR 541.2, which is the definition of the administrative exemption under federal law, quite expressly says performs duties under only general supervision. And in fact... But we don't really know what general supervision is, do we? California courts haven't told us that. I think that's an overstatement. The Zalasko case does address this, perhaps not as fully as we might like. But the Zalasko court does, and this is identified in our brief, does talk about the general supervision prong and does construe it as effectively synonymous with free from immediate direction control. And the language of the wage order very much supports that. Because if you look at the language of the wage order, it begins with the overarching statement that an employee is exempt under the administrative test if the following elements are met. It then lists a series of elements, all of which have to do with the nature of the work. And then there are two additional elements. One is that the employee is primarily engaged in exempt duties. And then the second one has to do with the amount of remuneration. And then in the California wage order, it goes on to say that the duties constituting exempt work shall be construed in accordance with the federal regulations. So... language there in the wage order is exempt work, which I think can only be read as referring to all of the different descriptions of what constitute exempt duties. And that includes duties that are administrative in nature, duties that involve the exercise of independent judgment and discretion, and duties that are performed under only general supervision. I realize I was doing the questioning and I was leading him to the where I wanted to get him. I'm some concerned. And so I'll ask you the question. Do you really believe that unless I adopt the law or regulations as it relates to FLSA and don't go with California law that I come out in a different place? No, I think the wage order is quite explicit that it is attempting to follow and to incorporate federal law, at least with respect to the type of work that is considered administrative in nature where California law departs from federal law is with respect to two elements that are not disputed here. And the first one is the primarily engaged test. We all know that under federal law, you don't necessarily have to show that you spend the majority of your time on exempt duties. Under California law, you quite clearly do, but that's not disputed here. And the second element is the salary basis test. The level of salary that's required to meet the administrative exemption under California law is different from federal law. But the statement in the wage order that the type of work constituting exempt work shall be construed in accordance with, and then it identifies the 2001 federal regulations by number, seems to me a very clear indication, and this is exactly how the California Supreme Court viewed the matter in Harris, a very clear indication that California law is meant to be in harmony. It's meant to be consistent with federal law with respect to the type of work that's considered to be administrative. All right. So how do you respond to claimant's, if you will, responses to me that the general supervision prong is not met? Well, I think we need to look at the evidence, and I think your characterization of the evidence in your questioning is accurate. I think that the overall picture that emerges when you put it all together is that the supervision that is given is after the fact quality, if you will, a quality check to make sure things are being done properly. And if they're not being done properly, to give prospective guidance and prospective advice so that they will be done properly the next time. And, of course, if there's no improvement, then, you know, a supervisor might have to use more drastic means. You would concede that one supervisor for seven employees is a rather intense supervision. They say that when you put it all together, all the different types of audits and checks and so on, diary entries, all of that, when you put it all together and you take into account all of the other duties that they had, claims were frequently handled for two to three months at a time without them even looking at it. That was common. When they would sit down to look at a claim, it was common they hadn't looked at it for two to three months. And when they did get around to looking at it, they're examining things that have already been done, claims that have already been settled, reserves that have already been set, depositions that have already been taken, and they're devoting at most, not on average, they say at most ten minutes. And this is just not enough time to conduct a de novo review. Necessarily, they are relying on their subordinates to work up the claim, to investigate the facts, to resolve the conflicts in the evidence, to make decisions, and for the most part, what they're checking is to see whether or not deadlines are being met, procedures are being followed. Because in ten minutes without conducting a de novo review, that's about all you can do. Do you agree that the reviews that took place were really just to see how these supervisors, the clients of these folks here, were doing, whether they were following appropriate procedures and so on, but that they did not countermand anything that had been done, like cases settled or the like? There is no evidence in the record whatsoever that that ever happened. It is true that certain decisions required prior approval. We concede that. We stated it as one of our undisputed facts. But it's pretty limited. Yes. Those are? Well, to deny a claim, as they point out, to set reserves or to settle a case in excess of authority. There was slightly different testimony from the two adjusters, which may well reflect slightly different supervisory practices, but there was some testimony that in some cases a referral to the fraud or the subrogation unit might require a prior approval. And in certain circumstances it might require prior approval to assign an attorney to a case. But reserves within authority, settlements within authority, directions to the attorney regarding litigation strategy, conducting your own investigation, it might sometimes be required to get prior approval to put an outside investigator on a case. But all of those things are squarely within their authority. There is no requirement to seek prior approval, and they don't seek prior approval. The supervisor doesn't find out about it until two to three months later, quite often. And at that point it's been done. So the parameters are clearly established, but if they want to do something outside the parameters, generally speaking, they need to get prior authority? Absolutely. There are limitations and constraints on their authority. I think the relevant question is not whether there are constraints. Even, you know, the CEO of the biggest company in the world operates under some constraints. The question is how much authority do they have? What's left over? And does that amount to an exercise of independent judgment and discretion with respect to matters of significance? And on that question we have the guidance of the Ninth Circuit in the Miller v. Farmers Insurance Exchange case that says absolutely. Doing what claims adjusters typically do when you're handling a large volume of claims, even if each claim is relatively small, in farmers it was as little as $3,000 per claim, evaluating the claim, setting the reserves, resolving the claim, that's an exercise of independent judgment and discretion with respect to matters of significance. That's administrative in nature. And, you know, they're so explicit as to say that says it all. That sentence from the opinion, I think, really jumps out. As far as we're concerned, that says it all. Let me go one further. It seems to me that counsel is suggesting that our, if you will, involvement in this prong to this extent, and really we only involved in this prong because that's the one he said he wanted to talk about. We got all the prongs down here, but it's more than the district court did. That the district court really did not focus on that which he should have in making the summary judgment, suggesting then he needs another shot. What is your response? Well, I think he's getting his other shot right now. That's what appeals are for. This is... Well, but what he's really saying is it doesn't, you haven't got anything in the district court record to suggest where you're going, Judge, even if you're going there. Well, I think the entire record is before this court. This is an appeal from an order granting summary judgment. So the review is de novo. And this court can and should review the evidentiary record and come to its conclusion as to whether or not there is a material dispute regarding an issue of fact. And I think actually the district court's order does address this and it's very well reasoned. The district court says with respect to general supervision that the same evidence that demonstrates that the plaintiffs exercised independent judgment of discretion free from immediate direction or supervision also establishes that they operated under only general supervision. I think that's exactly correct because that's the evidence we've been talking about today. It's the same evidence. It's what is the level of, what degree of authority do they have and how much supervision is there and how much can they do free from supervision and at what point does the supervision kick in and how extensive is it and what is the result of that supervision? The same evidence goes to both questions and that's the evidence that the district court referred to. And it just doesn't, to my mind, make a whole lot of sense to say that, you know, once we've determined that you're exercising independent judgment of discretion free from immediate direction and control, now there's this entirely separate inquiry as to whether you're performing your duties under only general supervision. And I don't think the language of the wage order requires that because the language of the wage order, as I previously explained, says to determine whether or not the work is exempt, look at the federal regulations. Federal regulations talk at great length about what constitutes being free from immediate direction and supervision. And I think the district court rightly concluded, the same way that the Zalasko court concluded, and that's a California case, that, yeah, it's the same question. What do you make of the statement in Harris 2 that not all activities that involve advising, management, planning, negotiating, and representing the company satisfy the qualitative component? I know that the case was de-published. I'm not sure what that means in this context, except that it's not precedential. But doesn't it make some sense that, isn't it true that the court should apply the wage order and the relevant regulations to the actual experience of these employees, which would indicate that a trial with actually hearing the witnesses would be, a better way to resolve this case? Only in this case. And for this case, there is an abundance of guidance and authority that says that the type of work that insurance claims adjusters do is the type of advising, negotiating, representing that constitutes exempt work. Now, there might well be another case, another context where the type of advising and negotiating, representing that the employees do doesn't, but that's not this case. And in this case, we have the authority we need. We have the historical record that claims adjusters are exempt, but the nature of the work of a claims adjuster changes over the decades because of changes in technology and changes in business practices. So perhaps it's time to take another look at it. Well, I see my time has expired. May I answer the question? I would agree with that if there were evidence in the record showing that these claims adjusters performed work that was so different from all of the published cases and authorities and DOL opinion letters that it warranted a fresh look. But the evidence in the record is actually that the type of duties they perform are exactly the duties that were described in the Miller case, exactly what's described in the DOL opinion letters, exactly what's described in all the other authorities we cite to in our brief. So that day may come, but it's not this case. Thank you very much. Counsel, you have some rebuttal time. You're first. Okay. I wanted to ask you a question right out of the box, please. Juries decide facts, but this is really a mixed question of law and fact. And what would you ask the jury to decide? They can't decide where that line is drawn, right? Well, respectfully, this court has already said that it is for the jury to decide where the line is drawn for the general supervision prong because of the dearth of authority on the subject in Campbell against Price Waterhouse Coopers. And this court has already said that when you're talking about the quantitative prong of the directly related test, that it is for the jury to decide because it's difficult for the court to draw the line. And that's based on the regulations that were incorporated into the wage order at the time that in 2000. Counsel, with respect, correct me if I'm wrong on this. I thought that what your folks did was in the record and essentially uncontradicted. I didn't understand the insurance company to claim that they did something different. They just said what they did is boilerplate standard issue exempt for all the reasons that he indicated. If we only have one version of the facts of what they did, what's there for a jury to decide? Isn't that pretty straightforward? There's not just one version of the facts. There's also facts that weren't even considered by the district court, like the 7 to 1 supervisor ratio that Her Honor brought up earlier. But if they're not in the record, they can't be considered. Are you just saying they weren't considered because nobody mentioned them in the order? I'm saying they weren't considered because it wasn't in the order, but they are in the record. I understand. So it was in the record. Right. It is in the record, and it should have been considered by the district court. And we're at a point where we're weighing evidence, which the Supreme Court in Anderson against Liberty Lobby said is not the judge's function to do. So 7 to 1 supervisory ratio goes against the factual arguments that there's less than general supervision. Seven days a week, that's one whole day for each employee the supervisor is supervising. Sure, it's only 10 minutes per claim, but when you have 165 claims, that's 1,650 minutes. That's 27 hours per employee. That's intense supervision. And there's more. You're saying the district judge did not have that before him? Yeah, I say these points for the ones that it was before him. It wasn't in the order. Okay, so you're saying the district judge didn't credit them. Right, exactly. Well, that's different than not having them. I apologize. And inbox counts, going into their e-mails to see if they have new e-mails that they haven't responded to in 24 hours. That's more than general supervision. This idea that it's only after the fact is completely invented, and this court had the opportunity to say in Campbell, well, after the fact supervision, that's okay, you can still be exempt, but this court didn't. And so everything's somewhat after the fact. You always act on what you perceive. Life is that way sometimes. That's how life is. It takes time for electrical impulses to travel through your brain. Indeed. But on top of it, what wasn't considered were these written performance warnings that I had in the record, wasn't credited. Counsel, I think you're over time. I'm over time. But we take the point that you indicate that in the record are some facts that are contradictory to what went in, that you contend they are material. So we have that point, and we thank you very much. Thank both counsel for their argument. The case just argued is submitted. Thank you. Thank you. I appreciate your time.
judges: Lefkow, Smith, Smith